Good morning. Please, the Court. My name is John Glagoski from Regetti Law Firm. On behalf of Appellant, I would like to reserve five minutes for rebuttal. Well, I guess since everyone else, since we're the first matter on the calendar, I would say that I guess you saved the best for last, but also the best for... You're the first matter on the calendar, but you're also the last matter on the calendar. Well, I see that these are for small cars, but in the criminal business, we would call the Lojacks when people are on home detentions. You know, when they have those ankle bracelets, they've got a Lojack. Well, we're talking about the recovery vehicle mechanism. Well, first of all, Appellant filed this appeal because the district court's decision cries out for reversal. The motion that was brought before the Court was a motion for summary judgment. However, the district court appears to have treated it as a bench trial, and that's important because under the standards, the Court must look at this de novo. But... What facts are in dispute exactly? Okay. Well, there are numerous facts. There are the facts, first of all, whether or not there was an agreement between the parties for purposes of using a company vehicle pursuant to the Employee Commuter Flexibility Act. There is also dispute... Wait. You contend there is an agreement or there was not an agreement? We contend there was no agreement as contemplated by the statute. Well, he does have an employment agreement. So, really, why isn't it just a matter of law for us to determine whether that employment agreement satisfies agreement under the statute? Because I don't believe that... Well, if you look at the statute, it talks about the specifics that are required. It has to do with the commute being in the normal commute and the use of the company vehicle... Okay. But when you're talking about disputed facts, it's not a disputed fact that he has an employment agreement, correct? There is a disputed fact that he has an agreement to use the company vehicle. Well, but there's not a disputed fact that he has a contract to be an employee and an agreement to be an employee, correct? I do agree with that, Your Honor. So why isn't this just the court has to determine as a matter of law whether that agreement is what is contemplated under the statute? I mean, it's an interpretation. How would we ask a jury to look... I mean, anything that's called Employee Commuter Flexibility Act of 1996, how would we ask a jury to determine whether that employment agreement satisfies the requirements of that? The way you would ask the jury is, was there a meeting of the minds? Was there a discussion, a negotiation about using a company vehicle, or was it something that was mandated? And the statute under ECFA says that it has to be an agreement. Okay. Okay. Then let me focus you here. Is there any case law that you can point us to subsequent to the enactment of the Employees Commuter Flexibility Act of 1996, which is the statute that we're talking about, that supports your arguments that the condition of employment cannot be an agreement under the statute? Do you have any case law? On that particular point, no, Your Honor, I do not. So then really what we have to do is we have to interpret the statute to say whether it covers that or not. So it seems to me as a matter of law, you can say that it doesn't, and then that would mean that you win. It's not whether there's a triable issue there. It's whether it's a matter of law that is or it isn't. What I understand the agreement to be is an agreement that specifically discusses the use of the company vehicle. And this is why it's important, because the legislator recognizes that the company vehicle has benefit for the employer and has benefit for the employee and at the same time has detriment to the employee because it makes them susceptible to regulations, to restrictions that they otherwise would not be susceptible to. I'm not saying you don't have a legal argument, but I'm saying the argument is legal either way. If you prevail on that, it's because you prevail on our interpretation of that particular statutory scheme that says that's not an agreement under the statutory scheme, but not that it's a triable issue. I understand. From our perspective, one of the issues we thought was whether there was the existence of an agreement. And from that perspective, that is why I mentioned that. What other factors in dispute? Whether or not the activities perform that are off the clock, and both sides are in agreement that work is performed off the clock, whether that is de minimis. And that's a tribal issue. Well, that also is, as a matter of fact, everybody agrees it takes a minute or so to download the PDT information, right? That is incorrect, Your Honor, because as I cited to you, there is one technician who actually clocks in and records 15 minutes of time. Well, let's say we take that as given. It takes 15 minutes, let's say. Okay? If that's your best evidence, it's 15 minutes. Well, that's my evidence that the LOJAC is on notice that this is an activity that takes at least that 15 minutes, because they're not suggesting that this is an exorbitant amount of time. They're not saying we won't pay you. They are agreeing to pay that 15 minutes. They pay one employee, right, for 15 minutes. Is that correct? Correct. And that's in the record? That is in the record. It would seem to me that the inquiry would involve ascertaining if this is something that they have to do for their employment, the download, and is it something that they, you know, what does the record show about whether you can do it during the rest of your day, or do you have to, can you only do it when you go home? You can only do it at home, and the reason being is you need a modem and some connection phone line. So that's why they have them clock out at the final installation of the day, then drive the vehicle, which they cannot use for personal use, home so that they can complete the PDT transaction. And I would point the Court to we had provided a breakdown and a chart with testimony from tech supervisors and tech themselves talking about the integral and indispensable nature of these activities. Now, whether something is compensable is whether or not it's a principal activity, and the way to figure out if something is principal is whether it's integral or indispensable, and you have testimony from Apelli's own declarants confirming that it's mandatory, that it's done on a daily basis, that they don't have any choice but to do it. Let's assume that you have a good argument that it's integral. That doesn't end the inquiry, though, correct? You still have to, the amount of time that it takes is still part of it. Let's say if it were integral but it took one minute. That still could be de minimis, right? Well, you would look at it could be if it was infrequent, if it was something that rarely or occasionally happened, but here you have it happening every single day. You have it in the morning. But, see, when you say one minute, you are looking at one aspect, and that's one thing that Apelli has tried to do is piecemeal this, and we've made it very clear that this is a continuous day case because they are required, once they get up in the mornings, they receive their first job of the day. They're not told how to get there, and they're not given instructions. They're basically told here are your jobs. Now pull out your Thomas guide or your map, and that's all in Mr. Rudy's declaration. Figure out how to get there, and then they do daily paperwork. That's also in there. Then they head out to their first installation. Doesn't every employee have to figure out for himself how to get to work? I mean, I had to figure out this morning how to get here. I mean, you had to figure out how to get here. Isn't that just preliminary? Well, in the context of myself, for instance, generally I'm going to the same place every day. I know where I'm going. To the extent that I am going somewhere else, it's infrequent. Do you charge your client for getting the map out and deciding how to get to a new courthouse? Do I do it? No, but I'm not a LOJAC employee, and I'm not required to have my phone on by 6, 30, or 7, which is also in the record, and to receive the job requirement, then chart it out. And if you look at Mr. Rudy's declaration, he says he would receive numerous jobs and then figure out because the way the jobs are set up is somewhat to be. Now, I think we know. I know what your argument is on that. I do have a question that I want to ask you before we get into your rebuttal time, and I'm sure that you've heard that we consider the time ours and whatever you have left is yours. But why do you oppose the appellee's request that the court take judicial notice of your client's deposition when the district court opinion refers to portions of the deposition? Well, I guess I will be honest, Your Honor. I'm not sure what specifically you're referring to. What I understood with respect to the testimony of the appellant was that he provided a declaration and they then attempted to submit certain aspects of his deposition, which I don't believe were properly, if I recall, for what the proposed use of that deposition testimony wasn't. But they're cited in the district court's opinion. There's parts of the deposition cited in there. Well, you don't need to spend any more time on that. I know you want to save time for rebuttal, unless I don't want to take time for my colleagues. So what specifically is involved with sending a PDT transfer? Well, I'm glad that you've brought that up, because on the one hand, they say it's just pushing a button. But if you look at various areas of their brief, then they talk about, well, it's required that you connect to a modem, you have to scroll down through a menu, then you push, you know, you send the information, you have to make sure that it goes through. But if you look at what we cited to in our brief, there is an elaborate explanation of what is required in the PDT transaction. I think it's on page 15 of the brief. I mean, there are such regulations that if you're at home and it's ten minutes before the hour or ten minutes after, you can't send it then. If you've got to see it. But that doesn't take any more time. To the time to send the PDT seems to be very brief. Well, if you look at the declarations of appellant and of all of the individuals who have both on appellee and appellant side, they've confirmed that it takes more than the minute that they're setting forth. That Mr. Lopez confirms that it takes 15 minutes, and he's getting paid for that 15 minutes. Their own declarants talk about it taking ten minutes. And if you're looking at Lindau, the question is the frequency. It's done every day. It's a requirement to be done every day. Can it be administratively recorded? Yes, it can. The appellant and also the declarants on both sides say, yeah, we could have called dispatch and told them how long it took. And then the question is in the aggregate. Certainly, even if it took one minute in the morning, charting routes, another minute in the morning, you're talking about two, three, five minutes per day, every day they're employed. For an employee making $9 an hour, you know, if you're being for a week's time, if you find yourself being denied close to an hour's pay, that is significant. And there are cases out there that talk about where even a dollar, where there's a dollar that may be deprived to the worker, that that's sufficient. These employees are under the directive, the control. They're performing activities that are indispensable and integral. It's coming out of not appellant. It's coming from the comments of the appellee's own declarants. And that's significant, and they shy away from that. They know that testimony staring them in the face, and they have no answer for it because they know that, in fact, this is integral and indispensable work. Thank you very much. Good morning. Good morning, Your Honors. One of the most critical. What's your name, please? Sorry. Dan Shamas for LOJEC. Thank you. One of the most critical points in the briefs and brought up in oral argument is whether or not there was an agreement between LOJEC and Mr. Rudy to drive a company car. They say, Rudy says that there was no agreement at all. There are no facts at all. That's absolutely not true. Before the court, we introduced an actual sign, eight-page written agreement between Mr. Rudy and LOJEC. Was that an agreement about how he was going to get compensated, or is that an agreement about how he's supposed to take care of the company property? It was the compensation was not referred to, but it was an agreement to here's your vehicle, here's how you maintain it, here are the rules. Yeah, but that's silent on whether there's a compensation element. Yeah, I do not believe that that's important at all. That's what we're talking about, isn't it? Well, I think that the agreement requirement is just that there be a meeting of the minds that you use the company car. I don't think it's that not be compensated. And if there is, then certainly the custom and practice of the employer can be used. As the legislative history shows, there is a statement in the House report that says, it's sufficient that the agreement need not be written, but it can be satisfied by, quote, an understanding based on established industry or company practices. Okay, now that's a different thing than saying you had a signed statement about how he's supposed to take care of property entrusted to him. Well, I would submit that the combination of the signed written agreement, which is like eight pages saying very clearly that you'll be driving the company car, in connection with the fact that he drove the company car for a number of years without being compensated, it shows a policy and practice that satisfies the agreement requirement. So the legislative history, that doesn't, a lot of times I don't like that. I mean, if the language is clear, I don't really like to look at legislative history. Because that's not part of the statute. You're right. It's just people talking. I agree. And the statute says only that there be an agreement. It just says that the use of the, this is quoting from the FLSA, the ECFA, the Employer Commuter Flexibility Act, that, quote, the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee. That doesn't say that the fact that it's unpaid is subject to an agreement. It just says there be an agreement. And as Your Honors pointed out, in an appellant's portion of the oral argument, the fact of an agreement could just be a matter of fact, like there's an agreement in terms of what's done and custom practice policies, things like that. I'm sorry, but do you agree with my analysis that that's the agreement that we're talking about, that's not disputed, we know the statute that we're talking about, so either way it's a legal issue for the court to determine? I agree. If we say the court got it wrong, then he prevails. If we say the court got it right, then you prevail on that issue. I would agree on that issue. But even if there was not an agreement, there are a few cases that, unfortunately, I didn't cite because that wasn't, I didn't cite them in the briefs, but the cases are Morgan, Adams, and Bobo, and I've got cites for them. Why don't you give them to the clerk and we'll take them from you? I will. And in those three cases, consider the argument that if there's no agreement, a ledge or there's no proof of an agreement, does that mean that the employer automatically loses? And all three courts say no because the ECFA was an employer-friendly act that gave employers sort of a safe harbor, where if they had an agreement, that meant that they're free and clear. Maybe you don't automatically lose, but then we look to the other facts. And if I understand the other facts, he has to go directly to the job in the morning. He cannot drop his kids off at school. Tell me if I have any of this wrong. He can't go get a cup of coffee. He can't go to the bank. He can't do any personal errands. There's no personal use of the company van. That's an insurance reason for that. But you may have your reason, but that seems to me very much like Marillion. Well, the key difference in Marillion was that in Marillion there was a designated drop-off point. So? Well, to me, that is a crucial difference to say that an employee has to drive to a work site, and then it becomes, and then you get on a bus, and that's required. Okay, but they say once he's on the bus, he can't drop his kids off, he can't do all these other things. I don't see how that's any different from this case. Well, I agree that Marillion used that analysis to think once he got on the bus, let's look at the control that he was under. And they said, well, there was a lot of control because he couldn't do all this stuff, this and this and this. But in this case, this is direct home to work, and I think that is in a different category than Marillion. And the federal cases that discuss it. The federal cases are in your favor, but this is a California case under the California law, which is more liberal, more favorable. Right. So they did bring an FLSA claim based on the commute. So I would say even if there wasn't an agreement under the ECFA, under federal law, we would still prevail because of those federal cases talking about personal stops and things like that are not relevant to whether or not the commute is commensable. Let me ask you another question. If he's required to do this downloading every day, why is he required to do that for free? Well, the reason is because it is basically a minute or two. He even confirms it in his deposition. Well, he says sometimes it is, sometimes it isn't. Well, in his deposition what he said was that he pressed the button and then he went and did other things. Let's say it's a minute or two, so that comes out to a minute a day, five days a week, that's five minutes. I know lawyers who charge in six-minute intervals. That's certainly true. Why isn't he entitled to his five minutes or six minutes, whatever it is? Because under the law, the rule of thumb is generally that ten minutes or less on a daily basis is not compensable. Usually if it's pre-shift or post-shift. But doesn't that, all right, but doesn't that, the analysis also has to do with whether it's an integral part of the job. Do you deny that this is an integral part of his job? I believe that it is more, it is post-liminary. That one you're losing me on. I've got to say on that because they have to do it every day. It's not intermittent. They have to do it every day. They can't do it until they get home. And then, and you actually pay, there's evidence in the record that you pay someone for 15 minutes a day. That evidence is one declarant under deposition who was asked, do you submit the time? And he says, I submit my hours, an extra 15 minutes for PDT time. There's no evidence that he said, I told Lojack this is for my PDT, and they paid him for that. The evidence is only that he submitted an extra 15 minutes on top of his total hours, and Lojack paid him. So that does not show a waiver, a concession that it is easily recordable or identifiable. Well, you can argue about that, but you've got one employee that says, I'm charging them 15 minutes a day and they're paying me. I don't see how you can credibly argue that it's not an integral part of their job, but then I don't think that that ends the inquiry in terms of under, well, Lindhaus, a fairly old case, and then there's a new case, I think, that was called to our attention, Maciel, which is a district court case, which they're not necessarily bound by, but it talks about going through the factors, and in this case, if you find that it's integral, then that's not the end of it, then the amount of time, and it lists, what, I think three factors, and if two out of the three factors are there, the Maciel case says, well, bingo, tag, you're it. You're right. If it's integral, that only says that it's otherwise compensable, and that's the only time that the minimus factor comes into play is if it's integral. I mean, as we stand here, can you look at me and tell me, if you require someone to do it every day, it's a part of, you know, that, I mean, they can't do it during the day because they have to get home, and it's not just some days or whatever. It's every day, and it's got to be done at home. Can you say that's, if a person didn't do it, wouldn't they be disciplined for not doing that? Certainly. So why isn't it integral then? Well, and I can concede that it's integral, and that's, like I said, that's our primary argument is that it's de minimis. Okay. Then why then doesn't that take us to counsel's point that we have a fact question about just how long it takes? Some days it's a minute. You say it's a minute. He says it can be up to 15 minutes. Well, it's not a fact question, and the reason it's not a fact question is because he admits that, well, the primary reason is that Lojac did not suffer or permit anything more than a de minimis time. Rudy, the plaintiff, had a form that he was given by Lojac to document exactly when he had transmission problems. The form instructs him that after two attempts to download, if they're unsuccessful, then immediately stop downloading, document the problem, and turn it in. Okay. Maybe he didn't do that. Exactly. Okay. That doesn't mean he didn't spend the time. It means he didn't fill out the form. But it does also mean that he never notified Lojac of anything. That's all it means, and maybe you'll win, but there's a fact question, isn't there? Well, is it a fact question to say that there's no evidence that Lojac ever had any knowledge of his downloading difficulties? If he didn't suffer or permit it as a matter of law, then that ends the issue, because he cannot recover for secretly spinning his wheels, spending time downloading when he had a form, and it was instructed to him as a matter of company policy to download, to document the problem after two attempts, and he admits that he did not do that, and this is kind of the theme of the case. The reason why he didn't do it, he said because he wasn't being paid for it. So he didn't want to document it, so he just kept spinning his wheels trying to download the time. So isn't there a little bit of a relationship? If we were to conclude that it's definitely an integral part, then isn't there a little bit of a relationship between the amount of, you know, Say if something's not an integral part, but it takes five minutes, saying that's de minimis, as opposed to it is an integral part, and it takes five minutes. That then could, that might not be de minimis. The other one might be de minimis. Well, I think if it's not integral, then you're in preliminary or post-preliminary activity, which is not compensable as a matter of law by definition. You only get to the de minimis question if it's otherwise compensable. In other words, if you did it for longer, then no problem. Okay, so what are the three prongs of Lindau? Three prongs are, one, I think it's the amount of time. Two, whether it's administratively reasonable to record it or it's documentable. And three, whether it's done on the aggregate, the question of the aggregate. The only factor that we lose on is aggregation. But the rules of all the courts that have cited the de minimis rule is that 10 minutes on a daily basis. That's generally the rule. And usually these are pre-set. Okay, so you lose on the aggregation. Why don't you lose on the integral? That sounds like you lose two out of three. No, because integral is not one of them. It's already integral because that's why you're talking about de minimis. Okay, so the amount of time, the aggregation, and what's the other one? The administrative burden of recording or the administrative practicality of recording such small amounts of time. And that factor really weighs in Lojac's favor because the cases we cite in the brief talk about exactly when you have significant leisure time or personal time and work time overlapping. Two cases we cite talk about post-shift relief, where one guy comes in to relieve the other employee of this. And he fills it in on things that happen during the day. And there's this overlap, and they make small chit-chat talk. And the courts say that is administratively impossible to isolate such time, and so employers can't be expected to record it. And so even though it happens every single day, and even though it is partly work, and even though it would be compensable if it were longer, the courts say it. Does it matter in this case because you're saying you don't want to pay him for the commute because you're saying under the statute that he's not entitled to it? So then it's really when he gets home he has to, like, separately initiate a certain type of work as opposed to. . . As opposed to what? As opposed to, say, if you were driving his own personal vehicle and he's already, you know, that we all. . . You don't want to pay him for commuting, and then you don't want to pay him for. . . And so you're saying, well, we don't have to pay for commuting. But then besides that, when you get home, then we want you to work when you get home, even though you're not on the clock, we want you to work when you get home for a certain amount of time. And it can only be done at home because you've got to have this special modem, and you've got to do it every day. And if you didn't do it every day, then you would, you know. . . I mean, but I think you can look at this in terms of separately. I know a pellant likes to combine everything and say, well, there's this mapping route. . . But you say, like, okay, it only doesn't take more than five minutes. Then why can't you pay him five minutes every day? Well, because many employees say it takes less than a minute. It takes. . . It is literally of the trifles that the Anderson court and the Supreme Court said, the trifles that employers can disregard because they're so small that. . . And they're so disconnected from his day. It is an end-of-day report. It is not. . . He's hired to install low-jack vehicles or install low-jack devices in vehicles. That's what he does. This is an end-of-day report that he just presses a button, hooks up the modem, presses a button, and then that's it. He can do anything he wants. That's what you say. He says it doesn't work like that. Well, no, no. If you look at his deposition, he does admit that. That's exactly what he says. He says all I have to do is hook it up, press the button. When it works. But he. . . But. . . Right. And so at that point, if there's this excessive time that he's complaining about, it never worked. I had to go back and back and back. Then we get into the suffered or permitted aspect of it, that he never told low-jack once, and he admits that, of such time. And if low-jack knows that it takes a minute to press the button or less, and you don't tell low-jack, well, it's taking me a lot more, then you can't secretly accumulate overtime compensation just because you. . . You know, it takes you that long. So it's really critical that the suffered or permitted comes into play exactly because there's a secret time that it takes him to download. I just have a few seconds left. If you have any more questions, I'd like to entertain them. Otherwise, I just want to reiterate that there is an agreement. The fact that it's not voluntary is irrelevant. There are many, many employment agreements that are conditions of employment, like arbitration and things like that, that are frequently enforced. The agreement's in the record. There's customer practice. And that's enough.  Thank you very much, sir. Thank you. With respect to the notice, if you look at all of the declarations that appellees submitted, and even the deposition testimony of those appellees, they talk about the fact that it's not something, the PDT, something that goes through generally on a first-time basis, that they are aware that there are problems with it. So for an appellee to argue that they don't know about the fact that this thing has problems, it's not supported by the record. With respect to the ECFA, I think that the ECFA is clear about where you have a general commute. We don't have a commute. And I think what is happening in this situation is appellees trying to take advantage of the ECFA saying, okay, well, this is really commute, so we'll have them do commute, but then we'll have them, once they get home, then they have to do more integral work. It doesn't work that way. The Portal to Portal Act, the continuous day theory, says that it's from the commencement of the employment to the end of that day's work, which would be at the end of the PDT transaction. Also, in Lindau, the frequency. It's done every day. The administrative, it can be. Heraclio Lopez does it. Mr. Brody says he can record it as well. So those are two factors. Thank you, sir. Thank you. Although the case just argued is submitted, we'll stand. Good morning.
judges: Hall, Silverman, Callahan